IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

KITE FAMILY INVESTMENT COMPANY )
et al., )
 )
      Plaintiffs, )
 )
vs. )   No. CIV-03-1469-W
 )   (Garnishment)
KENTON LEVINGS et al., )
 )
      Defendants/Third-Party Plaintiffs, )
 )
vs. )
 )
JAMES B. KITE, JR., )
 )
      Third-Party Defendant, )
 )
and )
 )
HOUSTON CASUALTY COMPANY, )
 )
      Garnishee/Counterclaimant, )
 )
vs. )
 )
KENTON LEVINGS et al., )
 )
      Counterclaim Defendants. )

## ORDER

    This matter comes before the Court on cross Motions for Summary Judgment filed by the twelve plaintiffs as garnishors and by garnishee Houston Casualty Company ("HCC"). The parties have filed responses thereto, and based upon the record and the following undisputed facts, the Court makes its determination.

    1. HCC issued a Directors, Officers and Organization Liability Insurance Policy ("Policy"), No. 14-MG-02-A1448, to Levings Learning LLC ("LLC"). The Policy had an

inception date of October 1, 2002, and an expiration date of October 1, 2003.

2. The Policy contained two "Insuring Agreements." The first provided coverage

"to or on behalf of the Insured Persons Loss arising from Claims first made against them during the Policy Period . . . for Wrongful Acts."

The second provided coverage

"to or on behalf of the Insured Organization Loss arising from Claims first made against it during the Policy Period . . . for Wrongful Acts."

3. The Policy defined "Insured Organization" as "the Named Organization," which in this case is the LLC.

4. The Policy defined "Insured Person" as

"any past, present or future director, officer, managing member, manager or Employee of the Insured Organization . . . ."

5. Kenton Levings ("K. Levings") was president and chief executive officer of the LLC and a member of the LLC's board of managers. As such, K. Levings qualified as an "Insured Person" under the Policy.

6. The Policy defined the term "Loss" as

"Defense Costs and any damages, settlements, judgments, back pay awards and front pay awards or other amounts . . . that an Insured is legally obligated to pay as a result of any Claim. . . ."

7. The Policy defined the phrase "Wrongful Act" as inter alia

"any . . . actual or alleged act, error, misstatement, misleading statement, omission or breach of duty (a) by the Insured Organization, or (b) by an Insured Person in his . . . capacity as a director, officer, member, manager or Employee of the Insured Organization . . . or any matter claimed against an Insured Person solely by reason of his . . . service . . . as a director, officer, member, manager or Employee of the Insured Organization . . . ."

8. The Policy contained a number of exclusions, including one designated by the parties as the "insured vs. insured" exclusion. This exclusion read in pertinent part that HCC

> "will not be liable to make any payment of Loss in connection with a Claim . . . brought by or on behalf of, or in the name or right of, the Insured Organization, whether directly or derivatively, or any Insured Person, unless such Claim is:
>
> (1) brought and maintained independently of, and without the solicitation, assistance or active participation of, the Insured Organization or any Insured Person, [or]
>
> (2) brought or maintained by an Insured Person for contribution or indemnity and directly results from another Claim covered under this Policy . . . ."

9. On October 21, 2003, the plaintiffs filed the primary action giving rise to the instant garnishment proceeding and named as defendants K. Levings, Kenton & Brandi, Inc. ("K&B"), and the LLC.

10. In the complaint, the plaintiffs alleged that K. Levings as founder of K&B and the LLC

> "embarked upon a massive scheme to defraud his investors . . . by assuring them that he had all the necessary intellectual property rights to operate his business when in fact . . . [he] had simply misappropriated copyrighted material from other sources . . . and incorporated them as essential elements of the programs that [he] . . . sold to local school districts throughout the country."

11. The plaintiffs further alleged that their investments, which totaled $1,329,826.10,[1] "were induced by [K.] Levings' fraudulent misrepresentations," and they prayed for rescission and to recover actual and punitive damages under both federal and

---

[1] The plaintiffs together with the Frederick C. and Roberta J. Haub Revocable Living Trust ("Haub Trust") invested a total amount of $1,432,410.10. The Haub Trust was not a party plaintiff in the primary action.

3

state law.

12. In the First Claim for Relief, the allegations of which were incorporated in all subsequent claims for relief, the plaintiffs contended that in connection with their investments, K. Levings

> "orchestrated a corporate reorganization by which . . . [K&B] contributed its business assets to . . . [the] LLC via a Contribution Agreement[,] [and] [s]imultaneously, the . . . [plaintiffs] purchased Class B units of membership interest in [the] . . . LLC, via a Subscription Agreement."[2]

13. The plaintiffs further contended that in purchasing the Class B membership units, they

> "necessarily relied upon the contemporaneous Contribution Agreement to determine what assets . . . [the] LLC would possess and therefore what assets would be the subject of their investment."

14. The plaintiffs also contended in paragraph 24 of the complaint that K. Levings caused K&B to make a certain representation and warranty to the LLC in the Contribution Agreement, and in paragraph 26 of the complaint, that K. Levings knew that the representation and warranty was false when made.

15. In their Fifth Claim for Relief, the plaintiffs alleged that "[t]he misrepresentations contained within the representation and warranty as set forth in paragraph 26 . . . constitute a negligent misrepresentation" and that "[a]s a result of [K.] Levings and . . . [K&B's] negligent misrepresentation, plaintiffs have been damaged . . . ."

---

[2]In the Subscription Agreement entered into by the LLC and the plaintiffs, subscribers warrant and represent that they "have not relied or acted on the basis of any representations or other information purported to be given on behalf of the . . . [LLC]." Subscribers also expressly acknowledge that the LLC "is not responsible for statements made or omitted to be made by third parties, including any persons who have assisted . . . [the subscribers] in the evaluation of the opportunity to purchase Subscription Units."

16. HCC received notice of the plaintiffs' claims on October 27, 2003, and did not dispute that the lawsuit was a Claim under the Policy.

17. The plaintiffs, James B. Kite, Jr., K. Levings, K&B and the LLC executed a Settlement Agreement, Mutual Release and Confidentiality Agreement in the primary action in April 2004. That settlement resolved all claims, accrued or unaccrued, asserted or unasserted, that related to, or arose in any way out of the plaintiffs' investments in the Class B membership units.

18. By letter dated January 12, 2004, Robert Roark, on behalf of K. Levings and the LLC, requested that HCC tender the limits of the Policy, $1,000,000.00, as part of the settlement.

19. By letter dated January 16, 2004, HCC counsel, Douglas Mangel, denied the request.

20. Roark also sought HCC's consent to settle the primary action, and in a letter dated April 15, 2004, Mangel responded that because "HCC ha[d] previously denied coverage for this matter," HCC's "consent to the proposed settlement need not be obtained."

21. Pursuant to the Settlement Agreement, consent judgments were executed against the LLC on May 24, 2004, and against K. Levings and K&B on June 30, 2004, in favor of the plaintiffs in the amount of $1,400,000.00 on the plaintiffs' Fifth Claim for Relief "for negligent misrepresentation in connection with [p]laintiffs' investment in Class B Membership Units of . . . [the] LLC."

22. The parties stated in their Settlement Agreement, and the consent judgments so provided, that the plaintiffs were awarded judgment "on a single claim for negligence only as alleged in the Class B Matter."

23. The plaintiffs and Kite also agreed, and the consent judgments so provided, that neither K. Levings, K&B nor the LLC

> "commit[ted] fraud; engage[d] in any intentional acts or omissions; breach[ed] any contract or warranty regarding copyright infringement or the issuance, sale or promotion of Membership Units in . . . [the] LLC; or commit[ted] any violations of state or federal securities statutes or regulations . . . ."

24. Kite served on the LLC's board of managers from September 2002 to September 2003, and thus, for purposes of the instant action, qualifies under the Policy as an "Insured Person."

25. Kite is not a party plaintiff. He is a partner and holds an ownership interest in plaintiff Kite Family Investment Company ("Kite FIC"), a Texas general partnership. He has no role or involvement in managing that company's business and is not a member of Kite FIC's board of directors. Kite does receive distributions of profits or gains from the partnership.

26. Kite is also the settlor and sole trustee of plaintiff James B. Kite, Jr. Revocable Trust ("Kite Trust"), and made all decisions on behalf of Kite Trust in connection with this lawsuit.

27. As parties to the Settlement Agreement, Kite Trust and Kite FIC will receive a proportionate share of any judgment awarded pursuant thereto, and Kite has conceded that he will benefit personally from any judgment awarded.

Neither K. Levings, K&B nor the LLC could satisfy the judgments entered against them. The plaintiffs therefore initiated the instant garnishment proceeding and argued that HCC not only was liable under the Policy, but also was liable for the entire judgment amount, even to the extent it exceeded the Policy's limits, based upon HCC's unreasonable refusal to pay. HCC denied coverage and filed a counterclaim seeking a declaration by the Court that HCC had no obligation to provide coverage under the Policy.

In support of its Motion for Summary Judgment and request for declaratory judgment, HCC has first argued that the Policy's "insured vs. insured" exclusion applies in this instance. As stated, this exclusion bars coverage for any "Loss in connection with a Claim . . . brought by or on behalf of, or in the name or right of, . . . any Insured Person," subject to certain exceptions that the parties have agreed are not relevant to the case-at-bar.

It is undisputed that Kite, as a former member of the LLC's board of managers, falls within the definition of the term "Insured Person." HCC has argued that it is therefore not obligated to pay because Kite is also the sole trustee of Kite Trust and an investor and partner in Kite FIC and thus, the claims brought by Kite Trust and Kite FIC were "brought . . . on behalf of, or . . . in the right of" Kite.

The Court disagrees. Kite FIC and Kite Trust are separate and distinct entities; the rights or interests they as plaintiffs sought to vindicate as investors which were misled by the misrepresentation in the Contribution Agreement were not the rights or interests of Kite.

A trustee is not the legal equivalent of the trust he administers. Likewise, a Texas partnership is a legal entity separate and distinct from its partners. Thus, the "insured vs.

insured" exception upon which HCC has relied is not applicable under the circumstances of this case.

HCC has next argued that neither K. Levings in his capacity as an officer or manager of the LLC nor the LLC itself committed a "Wrongful Act" as that term is defined in the Policy. The Court agrees.

Coverage under the Policy is not triggered by, and the definition of "Wrongful Act" in the Policy does not include, every "Wrongful Act" by an "Insured Person." Rather, coverage is available only for those "Wrongful Acts" by an Insured Person in his capacity as an officer or manager of the Insured Organization.

Thus, for purposes of coverage in this case, the Policy required that the "Wrongful Act" be

> "any . . . actual or alleged act, error, misstatement, misleading statement, omission or breach of duty . . . by the . . . [LLC], or by [K. Levings] . . . in his . . . capacity as a director, officer, member, [or] manager . . . of the [LLC] . . . or any matter claimed against . . . [K. Levings] solely by reason of his . . . service . . . as a director, officer, member, [or] manager . . . of the . . . [LLC] . . . ."

The record shows that the misrepresentation on which the plaintiffs relied "to determine what assets . . . [the] LLC would possess and therefore what assets would be the subject of their investment" and that is the basis for the Fifth Claim for Relief was set forth in that portion of the Contribution Agreement that contained the "Representations and Warranties of . . . [K&B]." K&B is not the Insured Organization. Thus, a "Wrongful Act" committed by K&B at the direction of K. Levings in his capacity as an officer, director or manager of K&B or committed by K. Levings in his capacity as an officer, director or manager of K&B is not covered.

Although the LLC, through and at the direction of K. Levings in his separate and independent capacity as an officer or director of the LCC, likewise made representations and warranties in the Contribution Agreement, those representations and warranties were not the basis of the Fifth Claim for Relief. At the time of the transaction giving rise to this claim for relief, K. Levings was acting in two capacities, and to the extent the Contribution Agreement was executed, the separate signature lines confirm these two distinct capacities. Because neither an Insured Organization nor an Insured Person in his capacity as a director, officer, member or manager of an Insured Organization committed the Wrongful Act for which coverage is sought, HCC is not obligated to provide coverage under the Policy and is therefore entitled to summary judgment in its favor[3] and to the declaration it has requested.

Accordingly, the Court based upon the foregoing

(1) DENIES the Motion for Summary Judgment filed by the plaintiffs on August 19, 2005;

(2) GRANTS the Motion for Summary Judgment likewise filed by HCC on August 19, 2005; and

(3) DIRECTS the parties to confer and submit within ten (10) days for the Court's approval and execution a proposed judgment that reflects the disposition and final resolution of all claims and counterclaims advanced by the parties in this garnishment proceeding as well as the disposition of all individuals and entities named as parties to the

---

[3]Having determined that this argument is dispositive, the Court has not considered the remaining arguments upon which HCC relied to deny coverage.

claims and counterclaims.

ENTERED this 26th day of September, 2005.

LEE R. WEST
UNITED STATES DISTRICT JUDGE